Mark J. Fonte
Louis M. Gelormino
**F&G Legal Group**
2550 Victory Blvd.
Staten Island, New York 10314
Telephone:     (917) 968-1619
mfontelaw@yahoo.com
louiegels@hotmail.com
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOHN GUETTLEIN, JOSHUA GARDNER, ALENA DUNAWAY, CLARISSA RECKLINE, WILLIAM TETREV,** and **BRENT LEBLANC**, individually, and for all others similarly situated,<br><br>                              Plaintiffs,<br><br>          -against–<br><br>**UNITED STATES MERCHANT MARINE ACADEMY, JOACHIM BUONO, individually and as Superintendent of the United States Merchant Marine Academy, the UNITED STATES MARITIME ADMINISTRATION,** and the **UNITED STATES DEPARTMENT OF TRANSPORTATION,**<br><br>                              Defendants. | Case No.:  2:21-cv-06443<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs John Guettlein ("Guettlein"), Joshua Gardner ("Gardner"), Alena Dunaway ("Dunaway"), Clarissa Reckline ("Reckline"), William Tetrev ("Tetrev"), and Brent LeBlanc ("LeBlanc") (collectively, "Plaintiffs") on behalf of themselves and a Class of similarly situated individuals, by their attorneys, F&G Legal Group, for their Complaint against the United States Merchant Marine Academy (the "Academy"), Joachim Buono ("Buono"), individually and in his

capacity as Superintendent of the Academy, the United States Maritime Administration ("MARAD"), and the United States Department of Transportation ("DOT") (collectively, "Defendants") respectfully allege as follows.

## PRELIMINARY STATEMENT

1. Plaintiffs and members of the Class are Plebes and Midshipmen at the Academy who are at risk of losing their right to pursue their professions in the military and the merchant marine under a Department of Defense ("DOD") policy incorporated by a Navy order (Ex. A, the "DOD Mandate") and a Superintendent Notice from the Academy (Ex. B, the "Academy Mandate") (Ex. A and Ex. B here together referred to as the "Mandate").

2. In light of the Covid-19 pandemic, the Mandate requires all the Academy's students, including Plebes and those who have been appointed as a Midshipman in the Navy Reserve, to be *fully* vaccinated by December 28, 2021. The Mandate includes no provision to opt-out of the mandate through mask wearing, temperature checks, weekly testing with FDA-approved tests, or if students have already developed antibodies following exposure to a Covid-19 infection.

3. All can agree that public health safety in one of the five federal service academies that educates and graduates leaders of exemplary character—who are committed to serve the national security, marine transportation, and economic needs of the United States—is essential.

4. Neither Plaintiffs nor members of the Class oppose any legitimate public health steps to make the Academy, where they exemplify the concept of service-above-self, a safer place to work and in which to learn.

5. But pursuant to the Mandate, any student at the Academy who is not fully vaccinated by December 28, 2021, will be disenrolled from the Academy and stands to lose their position as Plebes or as Midshipmen, and thus their ability to work as licensed U.S. Merchant

Marine Officers.

6.    In fact, Defendants have even *threatened* that third and fourth-year Midshipmen will be disenrolled and that all disenrollment carries penalties, such as liability for the full value of tuition (up to $260,000) if they choose to forgo vaccination and withdraw or transfer from the Academy.

7.    First and second-year students, meanwhile, have no ability to transfer because students at the Academy are unlike other students at private or public-school colleges. They cannot simply transfer all of their credits to any other college or university to complete their education.

8.    Such a Mandate that denies students an opportunity to serve their country shocks the conscience, violates constitutional rights, and not only should not be permitted, but must be restrained immediately to prevent irreparable harm.

9.    Alarmingly, the Mandate violates the Due Process Clause of the United States Constitution, which provides no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

10.   The substantive component of the Due Process Clause limits what the government may do in both its legislative and its executive capacities. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1988). Specifically, substantive due process protection prohibits government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

11.   Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). The right to pursue a profession—particularly one as important to the public good and as revered in civil society as serving in the military—is a

liberty interest for which one enjoys substantive due process protection.

12. If Defendants enforce the Mandate, Plaintiff and members of the putative Classes will lose their scholarships, course credits, their ability to pursue the Merchant Marines as an occupation, and other unique opportunities promised only by the Academy. Termination of the students who have spent years to develop their careers will result in Plaintiffs and Class members being irreparably harmed.

13. While it may be a hardship for Defendants to require other safety procedures like masks or weekly FDA-approved Covid-19 tests, the benefit to the public is great, and such hardship is far outweighed by that suffered by Plaintiffs and the Classes, who stand to lose their occupations.

## JURISDICTION AND VENUE

14. Pursuant to 42 U.S.C. § 1983, this Court has jurisdiction to enforce the provisions of the U.S. Constitution.

15. This Court has subject matter jurisdiction over the claims asserted by Plaintiffs under 28 U.S.C. § 1331 as this action involves claims based on Fourteenth Amendment of the U.S. Constitution and seeks to prevent Defendants from interfering with federal rights secured by the U.S. Constitution.

16. Pursuant to 28 U.S.C. § 1343(a)(3) and (4), this Court has subject matter jurisdiction over the claims asserted by Plaintiffs as this action is brought to redress deprivations under color of State law, statute, executive order, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the U.S. Constitution.

17. Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (e) as the acts complained of occurred in and some of the Defendants reside

in the Eastern District of New York.

## THE PARTIES

*Plaintiffs*

18. Plaintiff Guettlein is a senior (first class) Midshipman at the Academy.

19. Plaintiff Gardner is a senior (first class) Midshipman at the Academy.

20. Plaintiff Dunaway is a junior (second class) Midshipman at the Academy.

21. Plaintiff Reckline is a junior (second class) Midshipman at the Academy.

22. Plaintiff Tetrev is a freshman (fourth class or plebe) Midshipman at the Academy.

23. Plaintiff LeBlanc is a freshman (fourth class or plebe) Midshipman at the Academy.

*Defendants*

24. Defendant Academy is a United States agency that is operated by MARAD and funded by the DOT. The Academy operates as a federal service academy charged with the responsibility of educating and graduating licensed Merchant Marine officers. The Academy is located at 300 Steamboat Road, Kings Point, New York 11024.

25. Defendant Buono is the Superintendent of the Academy and resides within the Eastern District of New York.

26. Defendant MARAD is an administration within DOT and administers financial programs to develop, promote, and operate the Academy. It is an agency of the United States of America, located at the West Building, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.

27. Defendant DOT is a Federal Cabinet Department of the United States government concerned with transportation, including but not limited to, maritime transportation. It is an agency of the United States of America, located at the West Building, 1200 New Jersey Avenue SE, Washington, D.C. 20590. DOT operates, funds, and maintains the Academy.

## FACTUAL ALLEGATIONS

*Students Compete for Admission to the Academy*

28. The Academy is a federal service academy that educates and graduates Midshipmen of exemplary character who are committed to serve the national security, marine transportation, and economic needs of the United States as licensed Merchant Marine Officers and commissioned officers in the Armed Forces.

29. With 95 percent of the world's products transported over water, these Midshipmen are vital to the effective operation of merchant fleet for both commercial and military transport in peace and war.

30. Known for its rigorous academic program, the Academy requires more credit hours for a baccalaureate degree than any other federal service academy. This challenging coursework is augmented by the Academy's Sea Year experience, which affords Midshipmen the opportunity to acquire hands-on, real-world experiences abroad working on commercial or military vessels sailing to ports around the world.

31. In time of war or national emergency, U.S. Merchant Mariners become vital to national security as the "fourth arm of defense"—delivering military troops, supplies, and equipment overseas to American forces and allies operating as an auxiliary unit of the Navy.

32. To apply to the Academy, candidates must be nominated by a member of the United States Congress.

*The Academy Announces the Mandate for All Midshipmen*

33. On September 20, 2021, the DOD announced the DOD Mandate which requires that all service members, including Academy students who have been appointed as Midshipmen in the Navy Reserve, must be fully vaccinated by December 28, 2021.

34. Superintendent Buono clarified that the Mandate is a Navy order that applies to Navy personnel and is separate and apart from any policy that may be adopted by the DOT regarding a mandatory Covid-19 vaccination of USMMA students. He further noted that the DOT policy may require vaccinations even sooner.

35. One month later, on October 20, 2021, the Academy announced the Academy Mandate, which requires all Plebes and Midshipmen must be fully vaccinated by the DOD Mandate's deadline as well.

36. The Mandate warns that a history of Covid-19 disease or positive serology does not exempt Midshipmen from receiving a Covid-19 vaccine.

37. The Mandate warns unvaccinated Midshipmen that their ultimate disposition will be determined by the Covid Consolidated Disposition Authority (the "CCDA")—a central authority for adjudication that has disposal to full range of administrative and disciplinary actions, such as non-judicial punishment, court martial, or administrative separation.

*Unvaccinated Midshipmen Cannot Transfer to Other Schools*

38. Attending the Academy or other maritime academies is the traditional path to becoming a licensed United States Merchant Marine Officer.

39. In addition to funding and administering the Academy, the federal government also provides assistance and training vessels to six other maritime academies. Those four-year undergraduate programs operate as colleges within state universities and do not require a congressional endorsement.

40. Of these six academies, only two academies—Texas A&M Maritime Academy ("Texas A&M") and Great Lakes Maritime Academy ("Great Lakes")—have not implemented a vaccination policy similar to the Mandate.

41. Midshipmen, however, cannot transfer all of their course credits and sea days from the Academy to either Texas A&M or Great Lakes—rendering it impossible for students to transfer to any federally funded maritime academy without a vaccine requirement.

42. Unlike other universities and colleges around the United States, the Academy has offered no options, like weekly Covid-19 tests or a mask mandate in lieu of the vaccine, to accommodate unvaccinated students.

*Defendants Continue to Threaten Students*

43. Even more shockingly, Defendants have engaged in various tactics to intimidate Midshipmen to comply with the Mandate.

44. For example, Defendants have even implied that third and fourth-year Midshipmen will still be liable for the *value of tuition* if they withdraw or transfer from the Academy—an expense that, as valued by Defendants, amounts to at least $260,000.

45. Meanwhile, first and second-year Midshipmen will have lost a full year of their lives pursuing an education without an opportunity to transfer their credits to another college or university.

46. Defendants have disseminated these threats either in-person during Academy-wide events on the Mandate or in private communications with Midshipmen.

**CLASS ACTION ALLEGATIONS**

47. Plaintiffs represent the Class prosecuting the claim here, which, as defined below, are bringing their claims pursuant to Federal Rule of Civil Procedure ("Rule") 23(a) and (b).

**The Class**

48. Plaintiff brings this class action on behalf of herself and the Class of Midshipmen

affected by Defendants' Mandate.

## All Requirements of a Class Action are Met Here

49. This action meets the following prerequisites of Rule 23(a):

   a. **Numerosity**: The Class includes at least thirty Midshipmen who have not been vaccinated. Due to the high number of class members, joinder of all members is impracticable and, indeed, virtually impossible.

   b. **Ascertainable**: The proposed Class is ascertainable. Every Plaintiff is a Midshipmen at the Academy.

   c. **Commonality**: A substantial pool of common questions of law and fact exists among the Class, including but not limited to:

      i. The actions taken by Defendants to advance the Mandate; and

      ii. Implementation of the Mandate;

   d. **Typicality**: Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' are all Midshipmen at the Academy. The harm suffered by Plaintiffs' and the cause of such harm is representative of the respective Class. The claims or defenses of the Plaintiff and the Class arise from the same events and actions by Defendants and are based on the same legal theory.

   e. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs do not have any interests that conflict with the interests of the members of the Class. Plaintiffs have engaged competent counsel who are experienced in complex litigation, including class action litigation.

   f. **Superiority**: A class action is superior to alternatives, if any, for the timely, fair, and efficient adjudication of the issues alleged herein. A class action will

permit numerous similarly situated individuals to prosecute their common claims in a single forum simultaneously without duplication of evidence, expense, and resources. This action will result in uniformity of decisions and avoid risk of inconsistency and incompatible standards of conduct in the judicial system.

g. **Maintainability:** This action is properly maintainable as a class action for the above-mentioned reasons and under Rule 23(b):

   i. The individual amount of restitution involved is often so insubstantial that the individual remedies are impracticable and individual litigation too costly;

   ii. Individual actions would create a risk of inconsistent results and duplicative litigation;

   iii. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby rendering final injunctive relief or declaratory relief appropriate for the Class as a whole; and

   iv. Individual actions would unnecessarily burden the courts and waste judicial resources.

h. **Predominance**: The questions of law or fact common to Class Members predominate over any questions affected only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CLAIM FOR RELIEF

**Violation of the Due Process Clause of the U.S. Constitution**

50. Plaintiffs reallege and incorporate into this cause of action the allegations of the

Complaint set out above.

51. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

52. The substantive component of the Due Process Clause "limits what the government may do in both its legislative. . .and its executive capacities." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1988). Specifically, substantive due process protection prohibits the government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

53. Where the challenged conduct is legislative in nature the Plaintiffs must show both (1) a valid property interest, [liberty] or fundamental right and (2) that the defendants infringed that [liberty or] property interest in an arbitrary or irrational manner." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).

54. Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

55. The right to pursue a profession—particularly one as important to the public good and as revered in civil society as service in the military—is a liberty interest for which one enjoys substantive due process protection. *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897) (holding that "the 'liberty' mentioned in th[e] [Fourteenth Amendment] . . . is deemed to embrace the right of the citizen . . . to earn his livelihood by any lawful calling"). *See also Marino v. City Univ. of N. Y*, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) (noting that "a person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest").

11

56. The Mandate shocks the conscience and interferes with Plaintiffs' and members of the putative Classes' deeply rooted liberty interests, including the right to their occupation as U.S. Merchant Marine Officers.

57. If Defendants enforce the Mandate, Plaintiffs' and members of the putative Classes' will be deemed "uncommissionable" and unable to become officers in the Navy Reserves in order to graduate from the Academy and then become licensed Merchant Marine Officers.

58. Moreover, Plaintiffs will be disenrolled from the Academy, without the ability to transfer to other schools, resulting Plaintiffs' and Class members' being irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

A. Certifying the proposed Class pursuant to Rule 23;

B. On the Substantive Due Process claim, awarding Plaintiff and the Class damages from Defendants' violation of their constitutional right to substantive due process;

C. Costs of suit herein;

D. Investigation costs;

E. Payment of reasonable attorneys' fees;

F. Declaratory relief;

G. Injunctive relief;

H. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury for all issues so triable in this action.

Dated: New York, New York
November 19, 2021

By: */s/ Mark J. Fonte*
Mark J. Fonte
Louis M. Gelormino
**F&G Legal Group**
2550 Victory Blvd.
Staten Island, New York 10314
Telephone: (917) 968-1619
mfontelaw@yahoo.com
louiegels@hotmail.com
*Attorneys for Plaintiffs and the Class*
